IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| YOSUF CHAUDHRY AND AMENA ALVI, <br><br> Plaintiffs, <br><br> v. <br><br> COMMUNITY UNIT SCHOOL DISTRICT 300 BOARD OF EDUCATION, and PIERRE THORSEN, <br><br> Defendants. | Case No. 3:20-cv-50381 <br><br> Honorable Iain D. Johnston |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Plaintiffs Yosuf Chaudhry and Amena Alvi's (the "Parents") Third Amended Complaint. Dkt. 101. They allege that Defendant Pierre Thorsen, a public-school teacher employed by School District 300 (the "School District") proselytized Christianity, denigrated Islam, and helped their then-minor daughter, Aliya Chaudhry, convert from the Islamic faith to Christianity. They also allege that because of Mr. Thorsen and the School District's actions, Ms. Chaudhry further distanced herself from her Parents and was convinced to seek emancipation.

The Parents filed a panoply of claims against both Mr. Thorsen and the School District. Under 42 U.S.C. § 1983, they allege violations of the Establishment Clause of the First Amendment, the Due Process Clause of the Fourteenth Amendment, and the Equal Protections Clause of the Fourteenth Amendment. The Parents further claim a host of state law violations, including invasion of privacy and intentional

1

infliction of emotional distress. They also allege that the School District negligently hired and negligently supervised Mr. Thorsen.

The School District now moves to dismiss the claims alleged against it with prejudice. Dkt. 149. For the following reasons, the Court grants the School District's motion to dismiss. Counts II, IV, and VI are dismissed without prejudice. Counts VIII, X, XI, and XII are dismissed with prejudice. The Parents are granted one final opportunity to amend, so long as they can do so consistent with their obligations under Federal Rules of Civil Procedure 11 and 12. Fed. R. Civ. P. 11, 12. The Parents have 21 days to amend, and if an amended complaint is not filed by that date, the dismissal will convert to dismissal with prejudice.

## STATEMENT OF FACTS

Ms. Chaudhry attended Jacobs High School, a school within the School District. Dkt. 101 at ¶¶ 3, 10. At all relevant times, Mr. Thorsen was a history teacher at Jacobs High School who, as part of his curriculum, taught his students about world religions. *Id.* at ¶¶ 12, 14, 15.

According to the Parents, Mr. Thorsen sponsored a "Christianity student group," called "Uprising," where "students studied the Bible and where [Mr.] Thorsen debated other students regarding Christianity as the one true faith." *Id.* at ¶ 19. Uprising was "just one of many Christian clubs" in the School District. *Id.* at ¶ 21. Other Christian clubs included Christian Athletes and the Key Club. *Id.* The School District and "various schools" within the School District "encouraged and promoted

2

Christian clubs" by, for example, "assign[ing] sponsors[,] and representatives from the clubs were present at orientation nights when many other clubs were not."

Mr. Thorsen also allegedly "regularly discussed religion in his history class and after class with students." *Id.* at ¶ 18. "His tactics involved using his stature as a history teacher to present his opinions as fact." *Id.* at ¶ 27. He would "routinely" use his "subject of expertise as a method to groom and influence children in order to promote his understanding of Christianity." *Id.* He would also "debate students who were from different faiths or were atheist." *Id.* at ¶ 28.

"[B]efore, during, and after school," Mr. Thorsen "would openly advocate Christianity to students" while he would also "cast doubt, belittle, or discount other faiths," including Islam. *Id.* at ¶¶ 29, 30, 33. For example, he would "degrade and marginalize the religion of Islam often playing it off like a joke." *Id.* at ¶ 33.

"On multiple occasions," Mr. Thorsen allegedly approached Ms. Chaudhry who, at the time of the incident was a minor, and asked her if she could "answer certain questions" about the Prophet Mohammad's "private life." *Id.* at ¶ 34. Such questions are "commonly used by popular detractors of Islam," and lacked an "educational purpose." *Id.* at ¶¶ 35, 36. Mr. Thorsen's questions prompted him and Ms. Chaudhry to "privately discuss the merits of Islam," all the while Mr. Thorsen would argue that "his religion was the correct one based on certain statements presented as historical fact." *Id.* at ¶ 37. Mr. Thorsen's "charisma, influence, and authority" wore on Ms. Chaudhry. *Id.* at ¶ 39. Eventually, Mr. Thorsen "began to guide her into decisions she

3

would make regarding her religion," without notifying the Parents of "what was occurring at these meetings." *Id.* at ¶¶ 41, 42.

Mr. Thorsen also referred Ms. Chaudhry to "various members of his church," some of whom were "specifically referred" because they had converted from Islam to Christianity. *Id.* at ¶¶ 45–46. She became "inundated with emails and texts from these church members," who "continued to support" her in "her decision to convert to Christianity." *Id.* at ¶ 47.

Mr. Thorsen went on to ask one of the members of the church and other students from the Uprising group to offer Ms. Chaudhry a home to stay in, and advised Ms. Chaudhry on "what it would take to emancipate herself from her parents." *Id.* at ¶¶ 48, 50.

"All of these referrals and conversations occurred without anyone informing" the Parents. *Id.* at ¶ 51. The Parents allege that because of the School District and Mr. Thorsen, Ms. Chaudhry "abandon[ed] her Islamic faith and accept[ed] Christianity." *Id.* at ¶ 53. Ms. Chaudhry also "further distance[d] herself from her family." *Id.* at ¶ 54.

The Parents informed the School District of Mr. Thorsen's actions, who, after investigating, "confirmed" Mr. Thorsen's "long term endorsement and promotion of Christianity at school." *Id.* at ¶¶ 56–58. Following their investigation, the School District suspended Mr. Thorsen for 10 months and then transferred him to another school within the School District. *Id.* at ¶ 59.

4

## PROCEDURAL POSTURE

The Parents filed the first iteration of this lawsuit on October 5, 2020. Dkt. 1. The complaint appeared to be brought by the Parents on their behalf and on behalf of Ms. Chaudhry, who was still a minor at that time. *Id.* at ¶¶ 10, 11. The Parents amended their complaint on October 13, 2020, and again, the complaint appeared to be on behalf of the Parents and Ms. Chaudhry. Dkt. 5, at ¶¶ 10, 11.

On December 20, 2021, the Court instructed the parties to meet and confer and provide three dates and times when counsel and all parties would be available for a status conference. Dkt. 76. Based on counsel and the parties' suggestions, the Court set a telephonic status conference for January 31, 2022, and specifically requested that all parties, including Ms. Chaudhry, attend. Dkt. 77.

The status conference raised more questions than answers. For starters, one would think that before filing a complaint, an attorney would speak with Ms. Chaudhry to determine what effect, if any, the School District and Mr. Thorsen's alleged behavior had on her. But the Parents' counsel represented that he never spoke with Ms. Chaudhry before initiating this lawsuit. Dkt. 97, at 16. For obvious reasons, this set the Court's Rule 11 antenna to high alert. *See* Fed. R. Civ. P. 11; *Beverly Gravel, Inc. v. DiDomenico*, 908 F.2d 223, 225 (7th Cir. 1990). Indeed, it remains unclear if counsel for the Parents has *ever* spoken with Ms. Chaudhry concerning the allegations at issue in this case.

To make matters worse, based off some "discussion" between the Parents and their counsel, the Parents and their attorney arrived at the determination that they

5

did not need to inform Ms. Chaudhry that the Court was holding a status and that her presence was required. Dkt. 97, at 37.

The Parents also represented that they would be seeking leave to amend their complaint to remove Ms. Chaudhry, who had reached the age of majority, as a plaintiff. *Id.* at 5. But the Parents' counsel still contended that Ms. Chaudhry was never a party.

The Court entered an order that same day requiring the parties to provide Ms. Chaudhry with copies of the filings in this case. Dkt. 80. The Court also ordered that by March 28, 2022, Ms. Chaudhry shall submit notice indicating whether she wishes to continue in the case. *Id.* The Parents' attorney was required to give Ms. Chaudhry a copy of the order. *Id.*

On February 17, 2022, Ms. Chaudhry contacted the Court asking for information about her case, and the Court spoke with Ms. Chaudhry on February 18, 2022. Dkts. 87, 88, 98. Ms. Chaudhry informed the Court that she had "no idea" that her Parents were going to sue the School District and Mr. Thorsen, and that they "never" had her permission. Dkt. 98, at 7. Ms. Chaudhry indicated that she would like her Parents to remove her as a plaintiff in her Parents' forthcoming amended complaint. *Id.* at 9–10. With Ms. Chaudhry's consent, the Court recruited counsel to represent her. *Id.* at 14; Dkts. 88, 90. Again, the Court thanks recruited counsel for their representation of Ms. Chaudhry.

On February 18, 2022, the Parents sought leave to amend their complaint and remove Ms. Chaudhry as a plaintiff. Dkt. 89. The Court granted the Parents' request, and the Parents filed the operative complaint on April 1, 2022. Dkts. 100, 101.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 8 requires only that a plaintiff's complaint contain a short and plain statement establishing the basis for the claim and the Court's jurisdiction, as well as prayer for the relief sought. Fed. R. Civ. P. 8(a). According to the Supreme Court, this means that the complaint's factual assertions, rather than any legal conclusions, must raise the plausible inference that the defendant is liable for the misconduct alleged. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.* at 555. Reasonable inferences are drawn in favor of the plaintiff. *St. John v. Cach, LLC*, 822 F.3d 388, 389 (7th Cir. 2016). The defendant, as the moving party, bears the burden of establishing that the complaint's allegations, taken as true, are insufficient. *Marcure v. Lynn*, 992 F.3d 625, 631 (7th Cir. 2021).

## ANALYSIS

42 U.S.C. § 1983 "provides a remedy for violations of federal rights committed by persons acting under the color of state law." *First Midwest Bank Guardian of Estate of LaPorta v. Chi.*, 988 F.3d 978, 986 (7th Cir. 2021). A school district, as a unit of local government, is a "person" for § 1983 purposes, but is only liable for "its own violations of the federal constitution and laws." *Id.*; *Juniel v. Park Forest-Chi. Heights School Dist. 163*, 176 F. Supp. 2d 842, 848 (N.D. Ill. 2001). "Note the qualifier: 'its

7

own violations.'" *First Midwest Bank*, 988 F.3d at 986. Under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), and its progeny, a plaintiff must "challenge conduct that is properly attributable" to the school district. *First Midwest Bank*, 988 F.3d at 986; *see Monell*, 436 U.S. at 690–91. Critically, § 1983 "does not incorporate the common-law doctrine of respondeat superior," so a school district "cannot be held liable for the constitutional torts of its employees and agents." *Fist Midwest Bank*, 988 F.3d at 986.

As the Court cautioned the Parents, challenging the conduct of a school district is harder than challenging the conduct of an individual teacher. *See* Dkt. 97, at 30–31. A *Monell* claim, as opposed to a § 1983 claim against an individual, "obviously entails elements" that are "not directly involved" in actions against an individual. *Medina v. Chi.*, 100 F. Supp. 2d 893, 894 (N.D. Ill. 2000). A *Monell* claim "looks more broadly to the customs, policies, or practices that are alleged to contribute to the individual misconduct." *Cadiz v. Kruger*, No. 06 C 5463, 2007 U.S. Dist. LEXIS 88458, at *9 (N.D. Ill. Nov. 29, 2007). A "key" in "applying *Monell* and avoiding respondeat superior liability" is "distinguish[ing] between the isolated wrongdoing of one or a few rogue employees and other, more widespread practices." *Howell v. Wexford Health Servs., Inc.*, 987 F.3d 647, 654 (7th Cir. 2021).

With that, to state a claim under *Monell*, a plaintiff must allege: "(1) an express policy that causes a constitutional deprivation when enforced; (2) a widespread practice that is so permanent and well-settled that it constitutes a custom or practice; or (3) an allegation that the constitutional injury was caused by a person with final

8

policymaking authority." *Estate of Sims ex rel. Sims v. Cty. of Bureau*, 506 F.3d 509, 515 (7th Cir. 2007). These requirements "distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible." *Id.* (quoting *Pembaur v. Cin.*, 475 U.S. 469, 479 (1986)).

The Parents hang their hat on a "custom or practice" theory of liability. *See* Dkt. 101. To state a claim under that theory of liability, the complaint must allege "facts that permit the reasonable inference that the practice is so widespread as to constitute a governmental custom." *Gill v. Milwaukee*, 850 F.3d 335, 344 (7th Cir. 2017). Although there are no "bright-line rules" concerning how many times offending conduct must occur to amount to a "widespread custom or practice . . . there must be some evidence demonstrating that there is a policy at issue rather than a random event or even a short series of random events." *Bridges v. Dart*, 950 F.3d 476, 479 (7th Cir. 2020) (internal quotations and citation omitted). "[I]t is clear that a single incident – or even three incidents – do not suffice." *Wilson v. Cook County*, 742 F.3d 775, 780 (7th Cir. 2014). "Courts in this District regularly dismiss *Monell* claims where the plaintiff has failed to allege instances other than that from which he suffered." *Carmona v. Chi.*, 15-CV-462, 2018 U.S. Dist. LEXIS 1892, at *6 (N.D. Ill. Jan. 5, 2018) (collecting cases).

The custom or practice must also be "the moving force behind the federal-rights violation." *First Midwest Bank*, 988 F.3d at 987 (internal quotations and citation omitted). In other words, there must be a "direct causal link between the

9

challenged municipal action" and the alleged violation of the plaintiff's constitutional rights. *Id.* (internal quotations and citation omitted). Failure to "adhere to rigorous requirements of culpability and causation" results in municipal liability improperly collapsing into *respondeat superior* liability. *Bd. of Cnty. Com'rs of Bryan County, Okla. v. Brown*, 520 U.S. 397, 415 (1997).

> I. The Parents fail to state Establishment Clause and Substantive Due Process claims under *Monell* against the School District.

According to the Parents, the School District had a custom or practice that violated the Establishment Clause by "promoting and advancing Christianity and religion" through: (1) "hiring and retaining [Mr.] Thorsen"; (2) "permitting [Mr.] Thorsen to promote Evangelical Christianity while denigrating other religions for over 20 years"; and (3) establishing, sponsoring, and advising numerous Christian clubs, including Uprising. Dkt. 101 at ¶¶ 73–76. They also claim that the School District had a custom or practice in violation of their substantive due process rights to control the "upbringing, of their daughter" by hiring and retaining Mr. Thorsen and by establishing, sponsoring, promoting and advising numerous Christian groups, including Uprising. *Id.* at ¶¶ 90–97.

First, the one-off hiring and retention of Mr. Thorsen is insufficient to state a *Monell* claim. *Wilson*, 742 F.3d at 780. Second, the Parents' own complaint undercuts the theory that there was a custom or practice of "permitting" Mr. Thorsen to promote Evangelical Christianity while "denigrating" other religions. Dkt. 101, at ¶ 74. The Parents allege that after they informed the School District of Mr. Thorsen's behavior, they investigated Mr. Thorsen, suspended him, and ultimately transferred him to a

10

different school. Dkt. 101, at ¶¶ 56–59. A court need not ignore allegations in the complaint that undermine the plaintiff's claim. *Slaney v. Int'l Amateur Athletic Fed.*, 244 F.3d 580, 597 (7th Cir. 2001).

Third, the Court must "scrupulously" apply the causation standard to *Monell* claims. *First Midwest Bank*, 988 F.3d at 987. Doing so prevents "backsliding into respondeat superior liability," which is what the Parents' claim would require. *Id.* With respect to the Establishment Clause claim, the Parents' strike the tenuous position that the School District, through supporting the "Christian groups," set the stage for Mr. Thorsen and is thus liable for Mr. Thorsen's "actions." Dkt. 101 at ¶¶ 76, 79. Similarly, with respect to the Substantive Due Process claim, the Parents argue that the School District "permitted, by hiring and not supervising [Mr.] Thorsen and by sponsoring certain Christian clubs, the steps taken by [Mr.] Thorsen to facilitate the conversion and even take actions to advise Chaudhry on how to emancipate herself from her parents." Dkt. 157, at 14.

These theories of liability reek of respondeat superior. As the Parents all but admit, it was not the Uprising club or the other Christian clubs that was the "moving force" behind their alleged injuries. It was Mr. Thorsen. *See, e.g.*, Dkt. 101, at ¶ 27 (Mr. Thorsen "routinely used his subject of expertise as a method to groom and influence the children in order to promote his understanding of Christianity."); *id.* at ¶ 30 ("In addition to his actions at the Uprising club, Thorsen would repeatedly engage in conversations with students before, during, and after school where he would advocate for his faith and cast doubt, belittle, or discount other faiths."); *id.* at

11

¶ 37 (Mr. Thorsen, "on numerous occasions," would "privately discuss the merits of Islam . . . while also arguing that his religion was the correct one based on certain statements presented as historical fact."); *id.* at ¶ 39 (Mr. Thorsen's "charisma, influence, and authority continued to wear [Ms. Chaudhry] down with his constant advocacy in favor of Christianity."); *id.* at ¶ 41 ("Eventually, [Mr.] Thorsen began to guide her into decisions she would make regarding her religion."); *id.* at ¶ 45 (Mr. Thorsen "referred Chaudhry to various members of his church, including his pastor."); *id.* at ¶ 48 ("[Mr.] Thorsen asked one of the individuals to offer her home for Chaudhry to stay. These individuals, at [Mr.] Thorsen's behest, began to advise Chaudhry on what it would take to emancipate herself from her parents.).

Thus, the Parents did not state a claim that rises beyond the realm of speculation. *Twombly*, 550 U.S. at 555.

II. The Parents fail to state an Equal Protections claim against the School District.

The Equal Protection Clause of the Fourteenth Amendment requires that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV. "The Equal Protection Clause grants to all Americans 'the right to be free from invidious discrimination in statutory classifications and other governmental activity.' When a state actor turns a blind eye to the Clause's command, aggrieved parties . . . can seek relief pursuant to 42 U.S.C. § 1983." *Nabozny v. Podlesny*, 92 F.3d 446, 453 (7th Cir. 1996) (quoting *Harris v. McRae*, 448 U.S. 297, 322 (1980)).

12

To state a *Monell* claim against the School District for a violation of Equal Protections Clause, the Parents are required to "plead factual content that allows the court to draw the reasonable inference" that the School District maintained a custom or practice "of intentional discrimination against a class of persons" of which the Parents belonged. *McCauley v. Chi.*, 671 F.3d 611, 616 (7th Cir. 2011) (internal quotations and citations omitted).

The Parents, who are Muslim, allege that the School District denied them equal protection of the laws by hiring and retaining Mr. Thorsen and by establishing, sponsoring, and advising numerous Christian groups, including Uprising. Dkt. 101, at ¶¶ 115–19. The Parents claim, without further detail, that "groups of other faiths, including Islam, did not enjoy the similar treatment." *Id.* at ¶ 120. They further assert that the School District's "customs and practices created an atmosphere and otherwise allowed for [Mr.] Thorsen to treat other, similarly situated parents and their children differently than Plaintiffs." *Id.* at ¶ 121.

As the Court has explained, the hiring and retention of Mr. Thorsen, and Mr. Thorsen's alleged behavior, are insufficient grounds to state a *Monell* claim against the School District. And with respect to the Christian clubs, the Parents' grievance is that the School District did not establish, sponsor, and advise Islamic student groups, *not* that School District rejected requests to establish, sponsor, and advise Islamic student groups. *See id.* at ¶¶ 119–20. At most, the Parents allege an "uneven allocation" of school resources, which is markedly different than denying a "class of victims *equal protection*." *McCauley*, 671 F.3d at 618–19. Indeed, there are no

13

allegations that the School District maintained a custom or practice of rejecting efforts to establish, sponsor, or advise non-Christian student group. *See generally* Dkt. 101. Without a constitutional violation, there can be no *Monell* claim. *Petty v. Chi.*, 754 F.3d 416, 424 (7th Cir. 2014). Accordingly, the Parents fail to state a claim for an Equal Protections Clause violation.

> III. The Parents have forfeited their state law claims against the School District.

The Parents allege four state law claims against the School District: invasion of privacy, intentional infliction of emotional distress, negligent hiring, and negligent supervision. Dkt. 101, at ¶¶ 132–41, 149–58, 159–69, 170–77. In addition to pressing immunity and scope-of-employment arguments, the School District argued that each count failed to state a claim. Dkt. 149 at 19–22. The Parents, in their response, spend not a word addressing the failure to state a claim arguments. *See* Dkt. 157. By failing to respond to the School District's arguments, the Parents have forfeited arguments to the contrary. *Boogaard v. Nat'l Hockey League*, 891 F.3d 289, 295 (7th Cir. 2018). Thus, the Parents claims against the School District for invasion of privacy, intentional infliction of emotional distress, negligent hiring, and negligent supervision are dismissed with prejudice. *See* Hon. Iain D. Johnston's Standing Order, Failure to Respond, available at https://tinyurl.com/yc7j3cvh.

## CONCLUSION

For the foregoing reasons, the Court grants the School District's motion to dismiss [149]. Counts II, IV, and VI of the Parents' Third Amended Complaint [101] are hereby dismissed without prejudice. Counts XIII, X, XI, and XII of the Parents Third Amended Complaint are dismissed with prejudice. The Parents are granted leave to amend one final time, so long as they can do so consistent with Federal Rules of Civil Procedure 11 and 12. The Parents have 21 days to amend, and if an amended complaint is not filed by that date, the dismissal will convert to dismissal with prejudice.

Date: March 30, 2023

_____
Honorable Iain D. Johnston
United States District Judge