UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| Yosuf Chaudhry and Amena Alvi, <br><br> Plaintiffs, <br><br> v. <br><br> Community Unit School District 300 Board of Education and Pierre Thorsen, <br><br> Defendants. | Case No. 3:20-cv-50381 <br><br> Honorable Iain D. Johnston |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs Yosuf Chaudhry and Amena Alvi (the Parents) bring this action against Pierre Thorsen and School District 300 (the District), his former employer, under 42 U.S.C. § 1983 for violating their rights under the First and Fourteenth Amendments. Before the Court is the District's motion to dismiss the claims against it in their Fourth Amended Complaint. For the following reasons, the motion is granted.

I. **Background**

Aliya Chaudhry, the Parents' daughter, and at all relevant times a minor, attended Jacobs High School within the District. Fourth Amended Complaint (FAC) ¶¶ 10-11, at Dkt. 101. Pierre Thorsen taught history and world religion there. *Id.* ¶¶ 14-15. He sponsored a club at the school—which the District approved of, so long as it didn't meet during the school day—called Uprising, in which students were

1

taught Christian apologetics.[1] *Id.* ¶¶ 19-20, 22. In the late 1990s and early 2000s, Thorsen hosted popular movie showings during the lunch hour, where he would sometimes give Christian testimonies. *Id.* ¶ 25. He also confrontationally discussed religion with students during and after class, promoting Christianity and denigrating other religions. *Id.* ¶¶ 33-37, 42-44. This occurred repeatedly over several years. *Id.* ¶ 38.

At some point while at Jacobs, Chaudhry (theretofore Muslim) began to meet with Thorsen to discuss religion; he argued that Christian belief was historically justified, and Chaudhry eventually became convinced. *Id.* ¶¶ 45-48. Thorsen referred her to members of his church, including some who had converted from Islam to Christianity, and solicited help in finding somewhere for her to live if she were to become emancipated from her parents, whom he characterized as dangerous. *Id.* ¶¶ 53-56, 58, 60. The Parents knew of none of this. *Id.* ¶¶ 50, 59. When they discovered what had happened, they informed the District. *Id.* ¶ 64. The District investigated, suspended Thorsen, and transferred him to another school. *Id.* ¶¶ 65, 67.

## II. Legal standard

A motion to dismiss under Federal Rule of Civil Procedure 12(b) challenges the sufficiency of the plaintiff's complaint. *Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 826 (7th Cir. 2014). Under Rule 8, a plaintiff must allege facts sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

---

[1] Other Christian clubs within the District, with which Thorsen was not involved, included the Christian Athletes and Key Club. FAC ¶ 28. Christian clubs were assigned sponsors and were present at orientation nights when many other clubs were not. *Id.*

2

570 (2007). For a complaint to be plausible, the plaintiff's factual allegations—as opposed to any legal conclusions—must allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court accepts as true all the plaintiff's well-pleaded factual allegations and views them—and all reasonable inferences—in the light most favorable to the plaintiff. *Landmark Am. Ins. Co. v. Deerfield Constr., Inc.*, 933 F.3d 806, 809 (7th Cir. 2019). The moving party bears the burden of establishing the insufficiency of the plaintiff's allegations. *Marcure v. Lynn*, 992 F.3d 625, 631 (7th Cir. 2021).

### III. Analysis

Under *Monell*, a plaintiff may hold a municipality liable under section 1983—not vicariously, but in itself—for "its own violations of the federal Constitution." *First Midwest Bank v. City of Chicago*, 988 F.3d 978, 986 (7th Cir. 2021). One valid theory of such liability—which the Parents attempt to establish in this case—is that of a widespread practice "so permanent and well-settled" that it constitutes a custom of the municipality. *Id.* This custom must also be shown to have caused the alleged violation of the plaintiff's constitutional rights—that is, it must be the so-called "moving force" behind the constitutional violation. *Gable v. City of Chicago*, 296 F.3d 531, 537 (7th Cir. 2002).

Under the unofficial-custom theory of liability, for the complaint to state a claim that is plausible, it must allege facts that "permit the inference that the practice is so widespread as to constitute a governmental custom." *Gill v. City of Milwaukee*,

3

850 F.3d 335, 344 (7th Cir. 2017). A practice is widespread when the municipality's policymaker was "bound to have noticed" it. *Woodward v. Corr. Med. Servs. of Ill., Inc.*, 368 F.3d 917, 927 (7th Cir. 2004) (cleaned up). Identifying a policymaker under *Monell* is a question of state law. *See Horwitz v. Bd. of Educ. of Avoca Sch. Dist. No. 37*, 260 F.3d 602, 619 (7th Cir. 2001). In Illinois, a school district's policymaker is the Board, by whom the district is governed. 105 ILCS 5/10-1; *Veazey v. Bd. of Educ. of Rich Twp. High Sch. Dist. 227*, N.E.3d 857, 865 (Ill. App. 2015).

### A. Establishment Clause and substantive due process claims

The Parents assert that the District countenanced a custom that violated their rights under the Establishment Clause[2] and as a matter of substantive due process, namely, that of hiring, retaining, and failing to supervise teachers "like Thorsen," Pls.' Resp. at 8-9, at Dkt. 200, a custom which allowed Thorsen and unspecified others to unconstitutionally promote Christianity and infringe on their right to direct their daughter's upbringing. These *Monell* claims must be dismissed.

As the Court wrote in dismissing the Third Amended Complaint, a failure to specify any other teachers "like Thorsen" was alone fatal to the Parents' claim[3] — and the new allegations in this Fourth Amended Complaint have done nothing to cure the defect, merely reciting more instances of *Thorsen's* allegedly violative conduct. This is certainly the case with respect to any alleged custom of hiring or retaining teachers "like Thorsen"—the Parents do not allege that any other teachers

---

[2] As it is incorporated against the states under the Fourteenth Amendment. *Everson v. Bd. of Educ.*, 330 U.S. 1 (1947).
[3] "[T]he one-off hiring and retention of Mr. Thorsen is insufficient to state a *Monell* claim." Memo. Op. at 10, at Dkt. 177.

engaged in similar activities, or that the District hired them with the expectation that they would do so.

So too with respect to an alleged custom of failing to supervise; a theory that, in addition, is self-refuting. First, as the Court has noted, it is not required to avert its eyes from allegations that "undermine the plaintiff's claim." *Slaney v. Int'l Amateur Athletic Fed.*, 244 F.3d 580, 597 (7th Cir. 2001). The fact remains that when the Parents informed the District of their concerns about Thorsen, he was promptly investigated, disciplined, and transferred to another school—a sequence that hardly raises the reasonable inference that the District had previously known of and ratified Thorsen's conduct. Secondly, insofar as they claim that the District failed, in general, to supervise its teachers as closely as it might have, and that this neglect caused their injury, it fails on its own terms: the Board would not have had the requisite knowledge to support *Monell* liability. And to the extent that the Parents assert that the Board knew of and turned a blind eye to any potentially unconstitutional customs, the complaint fails to support it with enough non-conclusory factual matter—involvement in perfectly licit extracurricular activities by Thorsen and others does not plausibly suggest that the Board was on notice of any potentially unconstitutional customs.[4]

---

[4] *See, e.g.*, FAC ¶ 30, 32 (asserting that a District board member who is "very active" in his church created the Key Club, which requires a pledge to serve God, and serves as its advisor; and that the District's acting Superintendent has "offered prayers" on social media); *compare id.* ¶ 22 (asserting that the District knew about Uprising and allowed it so long as it was before or after school), *with Good News Club v. Milford Cent. Sch.*, 533 U.S. 98, 113 (2001) (finding no Establishment Clause issue present when a religious club, unendorsed by the school and whose meetings were open to the public, met on school grounds outside of the school day, when the forum was open to other groups).

The cases cited by the Parents are all inapposite in one way or another. First, the Parents cite *Leatherman v. Tarrant County* for the propositions that (1) there is no heightened pleading standard for *Monell* claims, and that (2) a "bare allegation" that an officer's conduct conformed to some custom suffices for a complaint to survive a motion to dismiss. 507 U.S. 163, 165 (1993). The first is undoubtedly true. As for the second, however, the quoted language is itself taken from a Ninth Circuit opinion only to illustrate the existence of a circuit split. Certiorari had been granted to answer whether a pleading standard more stringent than Rule 8(a)'s applied to *Monell* claims. In answering that it did not, the Court did not ratify the Ninth Circuit's language, but merely reiterated that the ordinary pleading standard, as elaborated in *Conley v. Gibson*, ought to apply. *Leatherman*, 507 U.S. at 168. That pleading standard has since been clarified in *Twombly* and *Iqbal*. Nothing in *Leatherman*—or any of the other pre-*Twombly* and *Iqbal* cases cited by the Parents—excuses a plaintiff from the usual requirement that a claim must be plausible if it is to survive a Rule 12(b)(6) motion. To the extent that more recent cases have held that the "doors of discovery" are unlocked by conclusory allegations that an injury was caused by a municipal custom, the Court respectfully declines to follow. *See Iqbal*, 556 U.S. at 678-79 (2009).

In short, the complaint continues to state an implausible theory of *Monell* liability because it does not plead enough factual matter to raise the inference that any assertedly unconstitutional practice had become so widespread that the Board was bound to have noticed it. It likewise continues to fail to plausibly allege that

anyone other than Thorsen was the moving force behind any of the Parents' asserted injuries. *See* Memo. Op. (MO) at 11-12, at Dkt. 177. At best, the Parents have alleged facts consistent only with the "isolated wrongdoing of one . . . rogue employee[]." *Howell v. Wexford Health Servs., Inc.*, 987 F.3d 647, 654 (7th Cir. 2021). Because *Monell* does not allow for *respondeat superior* liability, these claims are not plausibly pleaded, and they therefore fail.

### B. Equal protection claim

To plausibly plead a *Monell* equal protection claim, a complaint must lay out sufficient factual matter to allow for the reasonable inference that the District "intentional[ly] discriminat[ed] against a class" to which the plaintiffs belonged. *McCauley v. City of Chicago,* 671 F.3d 611, 616 (7th Cir. 2011). The allegations comprised by this Fourth Amended Complaint go no further in establishing a violation of equal protection cognizable under *Monell* than did the Third Amended Complaint; for the same reasons, then, this claim again fails. *See* MO at 12-14.

## IV. Conclusion

In dismissing the Third Amended Complaint, the Court afforded the Parents one final opportunity to state a plausible claim. MO at 15. Five bites at the apple are enough. The claims against the District are dismissed with prejudice.

Date: December 29, 2023

_____
Honorable Iain D. Johnston
United States District Judge

7